Good morning. May it please the court, Michael Tanaka, Deputy Federal Public Defender, appearing on behalf of Mr. Nedds. Mr. Nedds is currently serving a 25 years to life sentence for possession of a minute amount of rock cocaine, about five and hundreds of a gram. He filed a federal habeas petition challenging that conviction and sentence in 2001. At the time he filed that petition, the law of the circuit was unequivocal that the petition was timely filed. Because of that, he's entitled to equitable tolling, and I think that Brown disposes of this appeal, and I'm going to focus my attention today on that. In 2001, at the time he filed the petition, the law of the circuit was that the statute of limitations is tolled from the time you file your first state habeas petition until the California Supreme Court decides the last collateral challenge. In this case, he filed his first state habeas petition before the finality of this direct appeal, thus tolling the limitation statute until October 27, 2000, when the California Supreme Court denied the last habeas petition. He filed his federal habeas petition in September of 2001, well within the one year statute of limitations. In fact, the magistrate judge, in ruling on a prior motion to dismiss, found that the petition was timely filed. Then what happened? Well, the case pended in district court for quite a long time. And why was that, by the way? Was there a hearing, or why was it pending for, what, five years or something? It's not clear, Your Honor. The magistrate judge in this court was pending for a while because he was pro se, And then there was the motion to dismiss that was disposed of. And there was some question as to whether the fifth claim in the petition was actually a claim or whether it wasn't. Was there an evidentiary hearing in the meanwhile, then? No, there was not. Well, you know, we have these facts well in hand, as you know. So we know that during the course of these proceedings that the magistrate judge granted or accepted the 200-day gap, right? That's another case, I think. Oh, that's another case. Sorry. So what – I have two questions about that. That's what happens when you're left-handed. We have three very closely similar cases, and they are very hard to keep straight. But this one has the clearest legal issue, which is, you know, do we, in fact, apply Harris under these circumstances? And I guess there are – I have just two questions, because it seems generally equitable that we should. But two – one is that there were a couple of post-Harris cases that seem to say that – maybe say, I'm not sure, that there has to be some showing of actual reliance on the earlier opinion. You don't address those in your brief, and I wonder what you have to say about them. The first point I want to make is that the second case following Harris-Townsend, which is cited in the brief, the court assumed reliance – presumed reliance in that there was no – that issue wasn't even raised in the district court. The circuit raised it on its own. So there was no question or issue of reliance in the district courts. First thing. Just to clarify, didn't – is that – Lakey – when Lakey talks about those two cases, aren't those the two cases that it points out that as soon as the Supreme Court came down, they immediately filed so that it showed by their reaction that they had actually been relying on our prior rule until the Supreme Court overruled it? That's clear with Harris-Townsend. I don't believe so, Your Honor. I believe in Harris-Townsend, that litigation was done before. Well, it seems to me in this case, this may be the only one where he was – he actually filed, you know, well – clearly when this was the law and long before there was a change. So that may be sufficient reliance right there. I mean, people are presumed to follow the law, whatever it is. That was my next point, Your Honor. Lawyers all the time know what the deadlines are, and they file presumably in reliance on those deadlines. Here the deadline was ascertainable. He filed within what he believed the deadline was. I think you can almost conclusively presume that he relied on it. Second. Well, now, wait a minute, counsel. I mean, you're – if this panel were writing on a clean slate, I've had one of these cases, so I know what the concerns are, but Lakey seems to say, and I'd call your attention to Lakey, which says the following, the petitioners in Townsend and Harris, on the other hand, filed their federal petitions either before or immediately after Pace went into effect. Okay. Now, in this case, your client filed before Pace. Well, before Evans. But I think that actually makes my point, Your Honor, that in Lakey, the dispositive fact was that they couldn't find reliance because he waited 141 days until after the decision that changed law, in that case, Pace, to file. And in the other post-Harris case, he filed well before. Right. Townsend, where Lakey filed reliance based on the fact that he filed before the Supreme Court case They're citing it as Pace, so that's why I'm using Pace. Yeah. As the Supreme Court case. Well, the principle is the same. Yeah, all right. Here it's Evans. This was filed before Pace and before Evans, right? Pardon? Here he filed both before Pace and before Evans. That's correct, Your Honor. It was well before either of those cases. And then the only other question is the fact that you didn't raise this before and it's not in the COA. The response to whether the court clearly has the power to expand the COA to cover if the court deems that it's not covered by the COA. Arguably, however, it is covered by the COA. In Joris v. Gomez, this court found that in a COA that just raised statutory tolling, found that that covered an issue of equitable tolling. So if a COA that's related to statutory tolling can encompass equitable tolling. But were there district court proceedings in this case before Harris? Yes. Everything except for the report and recommendation. The report and recommendation postdated Harris by a couple of months. But in terms of when you raised things, it was all pre-Harris? Pardon? When the arguments were made in the district court were before Harris? Yes. But I guess there could have been objections, I guess. There certainly could have been objection based on Harris had counsel been aware of that. But the only question really would be, it's still a legal question. The only conceivable factional issue could be whether he relied on existing law. Did you say in Townsend that it wasn't raised until the court? That's correct, Your Honor. So basically it would just be following Townsend if we did that. That's right. And I think, though, in any case, the evidentiary record in this case shows that he relied on it. If you looked at the ---- But that's a different question. The question is, did you raise this question in a district court is what I'm trying to find out. No. This specific claim ---- But in Townsend, they didn't either. Is that right? Pardon? But in Townsend, they didn't raise this either. That's correct. But, though, Townsend, they reached, the court reached the merits on the petition because it was so clear at that point that the petition was timely that no one questioned that in district courts. Well, during this period when he was incarcerated, did they encounter numerous problems in putting this habeas petition together? He did, Your Honor, but I believe that this is most cleanly covered by the Townsend and Harris doctrine. And then the only other question, only other issue raised by the fact that this wasn't argued on a specific ground below is whether that can somehow be a waiver. Again, I think this law, this court's law is clear that you don't waive issues that way. Now, the court can reach it anyway because it's an issue of law and there's no prejudice. Either that or you can reach it on a plain air ground because it clearly not told the statute where he's entitled to work in injustice. Well, why don't you give us a quick summary of your position? Go right to the heart of it. It was sufficient because under the law at the time that he filed this petition, it was clearly timely. It's only a question of untimeliness because of subsequent law. So clearly under this court's precedent, when one relies on the prior law, that entitles one to equitable tolling. All right. Thank you. Good morning. May it please the Court. Deputy Attorney General David Wildman for the Respondent, R. Calderon Warden. Under Evans v. Chavez, the U.S. Supreme Court case, petitioner is not entitled to the 260-day gap or the 69-day gap. I understand that this court appears to be focused, however, on the equitable tolling issues which counsel has raised on appeal. Let me address those in order. Well, look, while he was in custody, he was in a high-security prison that experienced frequent lockdowns, limited access to library, violent conditions in that prison made it difficult for him to prepare his habeas petition in a timely manner. Do you disagree with what I've described as the conditions in that prison? Well, I disagree that it prevented him from filing his federal habeas petition in a timely manner, Your Honor. Well, doesn't he have to prepare for it? Doesn't he have to use the law library? I mean, you know, today the great writ is the great joke. We put so many impediments before people who wish to file their writs. And there's just so many hurdles and so many cases that come to bear. Why shouldn't we take a kinder approach when it comes to these delays? And think about a person who believes that they have a valid claim and they're locked up and the library facilities and the prisons are very limited in both their research tools and in the number of people that are allowed to use the library at the time. Well, so all we do now by some of these approaches we take, instead of saving time for the courts and giving people who believe they have a claim and wish to and instead of warding that off, we just create more problems and more time and we need more court personnel and magistrates. So maybe this is part of a full employment program. We'll hold you for it. I've heard about that. Yeah. Equitable tolling is for extraordinary circumstances beyond petitioner's control. And some of these things, such as being in a high security prison, being transferred between prisons, are not extraordinary circumstances. They are part and parcel of being in the prison system. Prisoners are transferred. But aside from that, first of all, I would like you to get back to Harris and that whole question. Before that, it seemed to me that Evans' discussion of the similar circumstances there seemed to suggest that the facts here might be reasonable carried under California law. Because in Evans, they said that his new job's working hours permitted him to use the library. He was relatively locked down free for a six-month period. Thus, viewing every disputed issue most favorably to Chavez, there remains a totally unexplained, hence unjustified delay of at least six months. And here, we're talking less than six months to begin with and we're talking of a period where his working hours didn't permit him to use the library except a couple hours a week in which there were some lockdowns and so on. So why just taking Evans isn't this a good period to be told? Well, I believe that the cases, and many of them are not published, that have allowed a longer gap in 60 days, 120 days under Evans have done so where the petitioner has done additional research and added new claims. Petitioner, he filed four petitions in the state courts. And each time, he raised the same four claims. And he did expand the petition somewhat. He did add a few pages of additional argument, but he didn't add new claims. And it was essentially, for the most part, the same petition raised each time. Can we focus on Townsend? Did they give up a reasoned ruling or did they just send out postcards? Well, each of the state court opinions, the L.A. Superior Court said there was no credible evidence of the Pitch's claims and it should have been raised on appeal. The California Court of Appeals said the petition is denied. How did they deny it? By postcard? The first California Court of Appeals petition said the petition is denied. The second one said. They sent a postcard. The second one appeared to be on the merits. It said for failure to demonstrate IAC. Right. And the Supreme Court, apparently there was one judge who called for an order to show cause on it. Is that right? I may have my cases mixed up, too, but I think so. Justice Mosk, is that right? I do not recall. So at least as far as the state court is concerned, I understand this isn't dispositive, but it's somewhat indicative. It didn't say anything about untimeliness. In fact, it indicated it was deciding things on the merits. Yes, we do have that. Evidence does note that, that sometimes the California courts are not clear on untimeliness. It says it's not dispositive and I understand that, but it's some kind of an indication. It is an indication. I want to go back to the Harris point. Could you focus on Townsend? You're in your supplemental brief that we asked you for. And I understand why you didn't argue it the first time, but you cite Townsend as if it doesn't apply to this petitioner. Why doesn't it? I mean, Townsend, as counsel pointed out, was one where he had filed before the Supreme Court overruled our jurisprudence on which presumably, one could say presumably, at least that's what they're arguing, that that's what they were relying on. So how is Ned's any different from Mr. Townsend? Well, I believe in Townsend the issue was first raised before this Court and not in the district court. Yeah. I believe what happened is that the Pace case came out during the pendency of the appeal and it first became argued in the Ninth Circuit. In fact, no timeliness claim was argued in the district court. We have a little different situation in this case in which petitioner represented by the federal public defender did argue the timeliness arguments in the district court. Well, that goes to the waiver issue, right, as to whether they should have brought it up in their argument before us, right? It goes to waiver. I'm asking about the reliance issue. Lakey talks about, and that's the precedent I'm concerned about because it says you have to have evidence of actual reliance, not a presumption. At least that's what it may be read as saying. But what they do is they distinguish and accept from that holding Townsend, among others. So I'm trying to understand is if we look to Lakey, which binds this panel, do we say that Townsend is a paradigm that Lakey acknowledged? It wasn't subject to the actual reliance rule that they were announcing in that paradigm. Aside from whether he raised it by, you know, in the district court or not, if Townsend didn't either, then maybe it fits, he even more fits the paradigm. But I'm talking about the actual reliance issue. Yeah. Well, in Townsend, the petition did have an opportunity to argue in district court. But we're asking a different question. We want to know about the question of whether, what it meant in Lakey when it talked about having to show reliance and why Townsend counted and why isn't this case like it. Forget the waiver for now. Okay? Forget the waiver question. Assuming it was raised properly, is it Townsend that applies or is it Lakey that applies? Well, I think it's Lakey that applies here. And Petitioner talked about what, in a three-page declaration, what prevented him from filing his petition, federal petition on time. And he didn't mention, although he's represented by counsel at this time, he didn't mention anything about the ---- But it was the law at the time. I mean, that's different from Lakey. And it's also different from the, there's another case with a W, whose name I'm forgetting. It's different from that because in that instance, it was too early, and in the other instance, it was too late. But in this instance, it was just on time, i.e., Goldilocks of the Bears. He filed. Well, in Waldron Ramsey, they said, well, he couldn't have been relying on it because the case hadn't come out yet. Here, the cases, relevant cases had come out. And ordinarily, when people file any kind of paper in a court, they rely on the existing law. So why should we assume that he didn't? Because he never said in the district court that he ---- Oh, come on. You know, he's locked up in a prison, and he's supposed to understand all these different views and nuances and all that. At the time, he filed an existing law. It was on his side. Well, certainly at the time, he was pursuing the state petitions. It was in the year 2000, and it was many years before Evans came out. Evans v. Chavez came out. But the distinction here is that he did file a declaration in the district court while he was represented by counsel many years later, and he doesn't talk about the fact that he relied on existing law. Was that declaration filed before or after Harris came out? I believe the declaration is dated in 2007. Right, before Harris came out. It's either February 2007 or August 2007. It's before Harris and Lakey and Townsend and Walter and Ramsey, all of them, right? Yes. Although these issues were percolating through the court system at that time, and I know during the time that Harris was being litigated, there were a number of other courts that, you know, in other cases where this same issue was being litigated. So he's supposed to be looking for the percolation. Is that what you're saying? Well, at the time that Harris came out, he was represented by counsel. Well, that doesn't mean anything, at least to me. You know, we don't know that counsel was listening for the percolations. Well, there's also another distinct... Well, it always comes down to reasonableness. Yeah. But there's a distinction between this case and Harris and Townsend in that here, in those cases, once he finished his state court petitions, they immediately or very quickly went to federal court. Here you had what looked like a ten-month delay, and there's no explanation for that lengthy delay. Whatever it was, it was valid under the law at the time, and the magistrate judge so found. Right? As it appeared the law was at the time, yes. Yeah. Okay. Listen, we are over your time, so we have to stick to our schedules. Okay? Thank you. Submitted then. Yeah. All right. You got ten seconds. I'll just say that I think the facts are clear. It shows that my client is impeccable, based on Harris and Townsend. Okay. As a matter of fact, you were minus ten seconds. And Mr. Tanaka, would you do this? The lady that left, she has nothing to do with any of these cases. She's got some serious personal problems with her immigration status. Would you just talk to her and perhaps direct her to one of our services that can maybe help her? Yeah, she's out there. Appreciate it. Thank you, counsel. All right. We'll call the next matter, and that is Reynolds v. Hatchback.
judges: Pregerson, Fisher, Berzon